## Black Starr Coal Corporation v. Reeder et al.

May 9, 1939.

J. B. SNYDER for appellant.

GOLDEN & LAY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The Black Starr Coal Corporation is appealing from a judgment of the Harlan circuit court affirming an award of the Workmen's Compensation Board awarding Coy Reeder compensation in the sum of $12 per week for a period of 100 weeks for the permanent loss of the sight of his right eye. It was stipulated on the hearing before the board that Reeder, to whom we shall hereinafter refer as appellee, was in the employment of appellant and, "received an injury to his right eye while in the line of his employment; that his average weekly earnings at the time were sufficient to allow him maximum compensation, if any. The accident arose out of and in the course of his employment. The issue to be

tried is the extent and duration of the disability, if any.''

It is argued in effect by counsel for appellant (1) that the defect, if any, in appellee's vision did not arise from the alleged accident; (2) that industrial blindness relates to the sight of both eyes and not to one eye; (3) that an optometrist is not qualified to testify as an expert as to causes of deficiency of vision; (4) that even though appellee had a vision of only ten per cent in the injured eye, according to all the doctors who had testified, there was no competent proof to show that the deficiency was caused by the accident received in appellant's mine.

Appellee testified that while working in appellant's mine at a cutting machine a piece of coal struck and injured his right eye; that theretofore his vision in both eyes had been good but thereafter the vision of his right eye was greatly impaired and had continued so. An eye specialist to whom appellee was sent for treatment testified that the first examination revealed a vision of 20/200 and several weeks later an examination revealed a vision of 20/200. He stated that he found a scar on the eye but gave as his opinion that the impairment of the vision was not due to the scar nor as a result of the injury. Another eminent specialist to whom appellee was sent for examination testified in substance to the same effect. These specialists gave as their opinion that appellee was a psycho-neurotic and that his lack of vision in the right eye was a matter of mind rather than a reality. According to the statement of Dr. Barton, an optometrist, to whom appellee was sent by the Board, the vision of the right eye at the time of the trial was 20/200. The two specialists who testified stated that they applied well known deceit tests to determine if appellant was a malingerer or feigning, but that the tests failed to so show.

Dr. Steel, an optometrist, who examined appellee stated that the vision of his right eye was 20/200. Both the medical experts and Dr. Steel testified that 20/200 was about 10 per cent vision. Dr. Steel also testified concerning the scar on the eye and gave as his opinion that the loss of vision was due to the scar or to the injury causing it. It will therefore be seen that if Dr. Steel was a competent witness there is unquestionably sufficient evidence to sustain the award of the board. No Kentucky cases are cited and we find none relating to

the competency of an optometrist as an expert witness on diseases or diseased conditions of the eye.

In Culver v. Prudential Insurance Company, 6 W. W. Harr., Del., 582, 179 A. 400, 403, an optometrist was not allowed to give an opinion as to whether an operation might restore or improve vision but in that case the witness stated that he never did any surgery but had textbooks relative to it. It was held that the evidence should be confined to the field in which he had at least some practical experience. In the course of the opinion it was said:

"Expert testimony is the evidence of persons who are skilled in some art, science, profession or business; which skill or knowledge is not common to their fellow-man and which has come to such experts by reason of special study and experience in such art, science, profession or business."

In Small v. Comer, 171 Okl. 418, 43 P. (2d) 716, it is said in effect that one who by reason of special knowledge, study, education or extensive observation has knowledge of the subject on the inquiry not acquired by persons of ordinary experience may give expert evidence concerning such subject. In Yelloway, Incorporated, v. Hawkins, 8 Cir., 38 F. (2d) 731, a chiropractor was permitted to testify as an expert concerning the extent and nature of an accident due to injury and to give an opinion as to the probable duration thereof where the testimony was restricted to the parts of the body to which the profession deals. See, also, O'Dell v. Barrett, 163 Md. 342, 163 A. 191.

"Where the occupation of the witness is such as to afford him special opportunity for acquiring knowledge and experience with respect to a kindred occupation, and to render it probable that such knowledge and experience were acquired, the witness is competent as to matters connected with the latter occupation." Note (d) 22 C. J. 52; and see long list of cases cited thereunder, also, text in same work at page 519, Section 606.

In King v. King, 161 Miss. 51, 134 S. W. 827, it was held that an expert witness need not be infallible or show the highest degree of skill but that it is generally sufficient if he possess peculiar knowledge respecting the matters involved not likely to be possessed by ordinary laymen. In Fightmaster v. Mode, 31 Ohio App.

273, 167 N. E. 407, it was held that expert evidence need not be restricted to the one best qualified to give an opinion.

Upon being asked concerning his qualifications Dr. Steel testified that while the primary function of an optometrist was testing the eyes and fitting glasses that they were trained to recognize diseased conditions of the eye, such being an important part of their training; that the school from which he graduated trained him in diagnostic work and examination of the eyes and that he was skilled at diagnosis but did not give treatment; but where treatment was needed he referred them to a physician who was a specialist in that line. He testified that he had long experience in his profession. Furthermore when asked concerning matters of evidence about which the oculist had testified he displayed general knowledge concerning the subject. In view of the evidence of training and experience of Dr. Steel and in the light of the authorities cited we are constrained to hold that his evidence was competent.

Under Section 4899, Kentucky Statutes, it is provided that an injured employee is entitled to compensation for total and permanent loss of sight of an eye. The physicians and optometrists testified that a loss of 90 per cent of vision of an eye was considered industrial blindness and in Burt v. Clay, 207 Ky. 278, 269 S. W. 322, an award so holding was affirmed. Since the finding of the board that appellee is industrially blind in his right eye as a result of the accident is sustained by competent evidence it is conclusive and binding upon the court. Kingston-Pocahontas Coal Company v. Maynard, 209 Ky. 431, 273 S. W. 34.

Judgment affirmed.