No. 35,104

ROBERT C. AMOS, *Appellee,* v. THE J. E. TRIGG DRILLING COMPANY and THE EMPLOYERS LIABILITY ASSURANCE CORPORATION, *Appellants.*

(113 P. 2d 107)

Opinion filed May 10, 1941.

*J. H. Jenson* and *Paul Ward,* both of Hays, for the appellants.

*Jerry E. Driscoll* and *Harold W. McCombs,* both of Russell, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from an award of compensation in a case where a workman sustained an injury to his thumb, and the loss of the four fingers of his right hand.

The respondent employer and its insurance carrier promptly began to pay the scheduled awards for such specific injuries according to the statute, but in this case there was also a total incapacity lasting about two years for which an additional award was made. That is the grievance complained of herein.

Robert C. Amos was an employee of the J. E. Trigg Drilling Company, whose business is indicated by its corporate name. On June 16, 1937, while Amos was greasing a motor-driven pump jack, his right hand was caught in its gears. All four fingers were crushed so as to require their amputation, and there was an injury to his thumb which caused a loss of its first phalange. For these injuries respond-

ents paid compensation in accordance with the statutory schedule (G. S. 1935, 44-510), viz.:

(2) Loss of first finger, 60 percent of claimant's average weekly wages for ................................................................ 37 weeks
(3) Loss of second finger, same, for................................ 30 weeks
(4) Loss of third finger, same, for................................ 20 weeks
(5) Loss of fourth finger, same, for............................... 15 weeks
(6) Loss of ·first phalange of thumb, same, for..................... 30 weeks

Total.................................................................. 132 weeks

As matters transpired in this case, however, the workman's mutilated thumb and his hand continued to give him so much pain as to prevent him from resuming any manual or other work for a long period after the expiration of the normal length of time his scheduled injuries should require for healing. An abortive nail kept growing out of the end of the mutilated thumb which was so tender and so susceptible of injury that he could not use his right hand. The hand itself would intermittently swell, causing loss of sleep, physical weakness, and loss of appetite. Frequent consultation and advice of doctors brought claimant no relief, until in April, 1939, when he was taken to an X-ray specialist who discovered a small particle of steel embedded in his hand. A competent surgeon removed that bit of steel, and likewise removed the matrix of his thumb; and in a month's time thereafter claimant's hand healed, his health and strength were restored, and he was able to work as a field hand the ensuing harvest. The total duration of his incapacity in the circumstances just stated lasted from the time he was injured, in June, 1937, until a month after the successful surgical operation in May, 1939. Because of that protracted temporary total disability, the trial court gave claimant an additional award of compensation for 104 4/7 weeks at the rate of $18 per week, or a total of $1,882.28. The court computed the amount due on account of the scheduled injuries, $18 per week for 132 weeks, gave credit for the regular periodical payments made thereon, added the additional award for total temporary disability, plus some small items not controverted, and gave judgment for $1,162.28 predicated on such computation.

Respondents appeal, complaining that the compensation award was for a greater sum of money than permitted and prescribed by the compensation act. They assert that an award for the aggregate number of 132 weeks for the scheduled injuries, at $18 per week (60

percent of the workman's weekly wages, not exceeding the $18 maximum) plus 10 percent of the 132 weeks at the same rate for a normal healing period, together with the routine expenses for the services of the compensation commissioner and his shorthand reporter, and for any proper medical and hospital bills chargeable to the employer constituted the limit of any award permitted or allowed by the statute.

As a part of this contention, counsel for respondents assert that our recent decision, *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684, 129 A. L. R. 654, which might justify the present judgment, was a downright nullification of the statute, and particularly subparagraph 21 of G. S. 1935, 44-510, which reads:

"(21) Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section, and no additional compensation shall be allowable or payable for either temporary or permanent disability: *Provided, however,* That the commission, arbitrator or committee may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten (10) percent of the total period allowed for the schedule injury in question nor in any event for longer than fifteen (15) weeks. . . ."

The excepted benefits provided in subparagraph 1 in the section just quoted refer to incidental matters such as medical and hospital treatment and the like, about which we have no present concern.

In the Chamberlain case the scheduled injury was the loss of the third finger, for which the statutory allowance was 60 percent of the workman's weekly wages, or $18, for twenty weeks, plus two weeks allowed as a healing period, or a total of $396. To that award this court on appeal directed that on the well-established fact that claimant's injured finger became infected and abscesses developed, necessitating successive surgical operations which totally incapacitated him for eight weeks, the workman was entitled to an additional award for that length of time, notwithstanding the language of subparagraph 21 to the effect that an award for a scheduled injury (as for the loss of a finger) shall be exclusive of all other compensation, and "no additional compensation shall be allowable or payable for either temporary or permanent disability."

This court's opinion written by Mr. Justice Hoch frankly noted that our liberalized interpretation of that provision of the compensation act differed from that of some other states, but that we did not

stand alone in our view. The still more recent case of *Morgan v. Adams*, 127 Conn. 294, 16 Atl. 2d 576, accords in principle with the rule applied in our Chamberlain decision. In that case a workman sustained the loss of the vision of his left eye, for which the local law awarded compensation at a specified proportion of his weekly wages for 156 weeks. Payment of this award was completed in May, 1935. Thereafter the sightless eye became troublesome and had to be removed. That operation caused a further total incapacity for nine weeks. The compensation commissioner gave an additional award therefor. The trial court disapproved it, but the supreme court held with the commissioner, quoting from its own earlier case of *Costello v. Seamless Rubber Co.*, 99 Conn. 545, 122 Atl. 79, thus:

" 'But where, in consequence of the amputation, injuries result which are distinguishable from those immediate results of the amputated limb, for example, if a nervous disorder ensue, or blood poisoning set in, or a phlebitis develops, affections such as these were not intended by the compensation act to be compensated in the loss of this member. They are not the normal and immediate incidents of the lost member.' "

In another late case, *Robichaux v. Realty Operators, Inc.*, 195 La. 70, 196 So. 23, a workman sustained an injury which resulted in the amputation of his right index finger. The scheduled allowance for such a loss was 65 percent of his wages for thirty weeks. About the time of the amputation, gangrene had set in, the wound remained open, and the professional testimony of surgeons was that another operation and skin grafting might be necessary to cause the wound to heal. Meantime the workman had a temporary total disability for a period much exceeding the thirty weeks' compensation allowed for the loss of the finger. The supreme court held that such an abnormal consequence of the loss of the finger entitled the workman to an additional allowance for such temporary total incapacity beyond the thirty weeks' award for the scheduled injury.

Both aspects of this precise question are tersely stated in the recent case of *Ottens v. Western Contracting Co.*, 296 N. W. 431, by the supreme court of Nebraska. Two of the headnotes read:

"Where disability resulting from compensable injury to fingers is the normal, usual, logical and expected consequence of the injury, no compensation can be awarded in addition to that provided by statutory schedule.

"Where a compensation claimant has suffered a schedule injury to some particular member, and some unusual and extraordinary condition affecting some other member has developed as result of the accident, an increased award should be made."

A majority of this court is quite satisfied with the rule announced in the Chamberlain case, particularly as stated in the second section of its syllabus, but a painstaking and protracted study of this record fails to disclose sufficient evidence to support the trial court's judgment that the consequence of the loss of plaintiff's four fingers and part of his thumb was so unusual and extraordinary as to justify an additional award therefor beyond the statutory schedule (except a healing period allowance)—in the face of the statutory provision that in cases where compensation is made for specific injuries in accordance with the schedule, "no additional compensation shall be allowable or payable for either temporary or permanent disability."

There is another subparagraph in G. S. 1935, 44-510 (No. 25) which might have some bearing on the case, but it was not raised below, and therefore should not be invoked to complicate the legal questions the litigants have chosen to present in this appeal.

In view of what has been said above, the district court's additional award of compensation for 104 4/7 weeks cannot be sustained. However, under the general credence the trial court gave to claimant's evidence, and minimizing the expert medical testimony, as it had the right to do, the trial court could have added 10 percent to the length of time the aggregate of the scheduled awards was to run, as a healing period—which would be 13.2 weeks. Adding this period to the 132 weeks of the scheduled award, we have a total of 145.2 weeks, to which length of time the trial court's finding and judgment can be justified, but no further.

The judgment of the district court must therefore be modified as herein suggested, and the cause will therefore be remanded to the district court for final disposition in accordance herewith.

Reversed and remanded.

WEDELL, J. (concurring specially): I concur in the decision, first, for the reason the record before this court fails to establish any accidental injury to the hand itself arising out of and in the course of the employment. If any competent evidence was introduced to establish such injury it is not before this court. Nor is it contended the condition of the hand was the result of any injury to the fingers or thumb. Second, the only injuries, therefore, as to which claimant was entitled to compensation were the injuries to his fingers and thumb. The thumb did not heal normally, and in such eventuality additional compensation may be allowed to the extent provided under the healing provision of our statute. (G. S. 1935, 44-510 [21].)

Furthermore, my interpretation of the medical testimony, when carefully analyzed, is not that claimant's inability to do his regular work was caused by the condition of his hand, but primarily by reason of the condition of his thumb. While the condition of the hand, assuming it had in fact arisen out of and in the course of claimant's employment, *might possibly* have disabled claimant from performing his regular duties, the uncontradicted medical testimony nevertheless affirmatively discloses the big thing—the real cause—of his continued inability to work was the fact the root of the thumbnail had not been completely removed during the first operation, with the result that the thumb did not heal normally until the entire nail was properly removed during the second operation. It seems to me it is just such a situation as the instant one that the lawmakers contemplated when they expressly provided for additional compensation during the actual healing period, such period not to be more than ten percent of the total period allowed for the schedule injury, nor in any event for longer than fifteen weeks. (G. S. 1935, 44-510 [21].)

I am aware of decisions from some other jurisdictions which allow awards in harmony with the decision of the district court in this case. If time permitted I should like to analyze them and the statutes upon which they are based. I, however, know of no decisions which authorize the award made in the instant case, upon facts here presented, where the law contains a provision such as ours, for limited additional compensation during the healing period and no more.

Mr. Justice HARVEY joins in this specially concurring opinion.