No. 35,572

EDGAR L. McCULLOUGH, *Appellee,* v. THE SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellant.*

(127 P. 2d 467)

Opinion filed July 11, 1942.

*Lloyd S. Miller,* of Topeka, *S. L. Harris* and *Arthur S. Brewster,* both of Kansas City, Mo., were on the briefs for the appellant.

*Earl H. Hatcher,* of Topeka, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a workmen's compensation case. It was presented to the compensation commissioner upon the joint petition and stipulation of the claimant and respondent. This may be summarized or quoted as follows: Claimant and respondent were operating under the workmen's compensation act. On October 21, 1939, claimant met with personal injuries by accident arising out of and in the course of his employment when he was struck in the eye by a piece of gravel. Claimant's injuries and disabilities are:

"(*a*) According to expert medical opinion as set out in medical reports of J. N. Sherman, M. D.

"(*b*) That according to the consensus of opinion of the parties hereto, claimant's injuries and disability for which he is entitled to claim compensation are: The total loss of the use of the left eye for a period of 16 weeks followed by partial loss of 80% of the use of said eye for a period of 38 weeks from February 11, 1940, to November 6, 1940, at which time his disability was reduced to 20% loss of the use of said eye by the use of corrective lens furnished by the respondent, and that the parties agree that claimant is entitled to compensation for 57.6 weeks therefor."

The wages of claimant, notice of accident, claim for compensation, and the reasonable medical and hospital expenses, amounting to $266.75 paid by respondent, and the fact claimant had returned to work, were all stipulated, and no question concerning them is raised.

The parties request that the workmen's compensation commission issue its order making such an award as is just and proper under the facts, and that the costs be taxed to respondent.

The abstracted portion of the medical report referred to in the stipulation may be summarized or quoted from as follows:

"There was a cut through the cornea in which the iris was incarcerated. The anterior chamber of the eye was filled with blood." The injury resulted in a permanent defect and loss of use, "Impairment of vision. . . . Only partial loss. About 20% with use of glasses. Without glasses, about 85% loss, assuming, of course, the vision was normal in this eye before the accident." Normal recovery was delayed "by reason of adhesion of the iris of [to] the cornea and absorption of the lens." Under the head of "Remarks" requesting information of value not previously included: "By reason of the patient having an aphicic [aphakic] eye of course he is permanently disabled being unable to see either at a distance or close without a very strong lens. Even though this lens is put on the patient he will be unable to use it because the uninjured eye is very strong and he will use it regardless of the correction on the injured eye."

The pertinent finding of the commissioner is as follows:

"The commissioner, having considered the joint petition and stipulation, and the medical reports attached thereto, is of the opinion and finds that the claimant herein has sustained fifteen (15) weeks compensable temporary total disability as the result of his accidental injury of October 21, 1939, which has been followed by eighty (80%) percent permanent partial loss of vision of his left eye, being the loss of vision found to exist without the aid of corrective lens. With the aid of corrective lens the loss of vision in the eye is reduced to twenty (20%) percent. However, there is no evidence whatever to show that this workman was required to wear glasses or corrective lens prior to the date of his accidental injury. The commissioner is of the opinion, therefore, and finds that the loss of vision of the eye should be based on that percentage of loss of vision found to exist without the aid of corrective lens."

An award was made in accordance with this finding. Respondent appealed to the district court where, after a hearing the court found that a complete statement of the history and facts of the case are set out in the findings and award of the commissioner.

". . . that all facts were agreed upon by claimant and respondent, and that the only question for determination by the court is a question of law, whether the claimant's loss of vision of the eye should be based on the percentage of loss of vision found to exist with the aid of corrective lens, or without the aid of corrective lens.

"The court further finds that the findings and award of the workmen's compensation commissioner should be approved and confirmed and that the loss of vision of the eye should be determined without the aid of corrective lens; that claimant has an eighty percent permanent partial loss of vision of the left eye and that award should be made in accordance therewith."

Judgment was rendered for the claimant in harmony with these findings.

From the record we understand respondent furnished claimant the corrective lens November 6, 1940; also that the workman was about fifty years of age at the time of his injury.

The parties in preparing the stipulation, and the compensation commissioner and the court in determining the award, followed the method of computation in such a case outlined in *Hering v. San Ore Construction Co.*, 130 Kan. 70, 285 Pac. 592. However, that case did not involve a question relating to a decrease of the award because of a corrective device or appliance furnished the workman by his employer.

Respondent has appealed and presents as the only legal question involved whether, in determining the partial loss of the sight of the eye, consideration should have been given to the use of corrective lens.

The parties will have no difficulty computing the amount of compensation either under the judgment of the court or under the theory contended for by appellant.

Counsel for appellant quote excerpts from the opinions in *Cramer v. Railways Co.*, 112 Kan. 298, 211 Pac. 118; *Gentry v. Williams Brothers*, 135 Kan. 408, 10 P. 2d 856, and *Rupp v. Jacobs*, 149 Kan. 712, 717, 88 P. 2d 1102, which in differently worded language set out the purpose of the compensation act and state that the public, the employer and employee are interested; that the measure was enacted because of the waste of life and limb in industrial accidents; that the public in the end pays the financial loss in the increased price of the product, and that it was designed to establish a just and equitable basis for compensation of such workmen engaged in hazardous employment. There is no controversy over these general purposes of the act. They cite G. S. 1939 Supp. 44-510, as follows:

"The amount of compensation under this act shall be: (1) Treatment and care of injured employees. It shall be the duty of the employer to provide the services of a physician or surgeon and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches and apparatus, as may be reasonably necessary to cure and relieve the workman from the effects of the injury; . . . (3) Where death does not result from the injury. . . . (c) Where disability, partial in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section, but shall not be entitled to any other or further compensation for or during

the first week following the injury. Thereafter compensation shall be paid as provided in the following schedule, '. . .

"(15) For the loss of an eye, or the complete loss of the sight thereof, 60 percent of the average weekly wages during one hundred ten weeks. . . .

"(19) . . . For the permanent partial loss of . . . the sight of an eye . . . compensation shall be paid at 60 percent of the average weekly wages, not in excess of eighteen dollars per week, during that proportion of the number of weeks in the foregoing schedule provided for the loss of . . . the sight of an eye . . . which the partial loss thereof bears to the total loss of . . . the sight of an eye . . ."

The medical attention provided for in (1) of this section is part of the compensation due the employee. (*Richardson v. National Refining Co.*, 136 Kan. 724, 727, 18 P. 2d 131; *Taylor v. Missouri Pac. Rld. Co.*, 146 Kan. 668, 73 P. 2d 62.) Where medical attention will cure or greatly benefit the injury to the workman caused by an accident it has been held an unreasonable refusal on the part of the workman to receive the medical attention will justify the commissioner or the court in denying compensation. (*Strong v. Iron & Metal Co.*, 109 Kan. 117, 126, 198 Pac. 182; *Gentry v. Williams Brothers*, supra, pp. 409, 410.) In each of those cases the workman was claiming total permanent disability because of a hernia, which the evidence disclosed could be relieved entirely by an operation, for which his employer was willing to pay and which there was no reason to believe would be a danger to the workman.

The injury in this case is not of that type; it is a scheduled injury. The statute [G. S. 1941 Supp. 44-510 (3) (c) (1) to (26)] contains a schedule providing for the compensation to be paid for injuries to specific parts of the body. In *Stefan v. Elevator Co.*, 106 Kan. 369, 187 Pac. 861, it was said:

"The legislature evidently believed the loss of a specific member or organ deserved the compensation stated, whatever else occurred." (p. 373.)

Authorities from other states having a similar statute are to the same effect.

". . . when the injury consists of one of the specified scheduled ones and of that alone, the commission is without jurisdiction to make an award on any different basis than that set forth in the statute, . . ." (*Ossic v. Verde Central Mines*, 46 Ariz. 176, 187, 49 P. 2d 396.)

The rule was followed in *H. K. Toy, etc., Co. v. Richards*, 68 Ind. App. 653, 117 N. E. 260, where it was said:

"It is immaterial that an injury did not seriously impair the employee's working power or that the employee was able to return to work within a short time after the injury." (Syl. ¶ 2.)

The same thought is expressed in different language in other cases: *Bateman Mfg. Co. v. Smith,* 85 N. J. L. 409, 89 A. 979: The payment "is not to vary according to his age or the character of his work or his expectation of life." (Syl. ¶ 2.) *National Tank Co. v. Gold,* 185 Okla. 574, 95 P. 2d 253: "This schedule is comprehensive, complete, and exclusive. . . . ." (p. 575.)

To the same effect see: *Cresson Co. v. Industrial Com.,* 90 Colo. 353, 9 P. 2d 295; *Lente, Appellant, v. Luci,* 275 Pa. 217, 119 A. 132; *Catlett v. Chatt. Handle Co.,* 165 Tenn. 343, 55 S. W. 2d 257; *Western Condensing Co. v. Industrial Comm.,* 234 Wis. 452, 291 N. W. 339; *Liberty Mutual Ins. Co. v. Holloway,* 58 Ga. App. 542, 199 S. E. 334; *Carlson v. Condon-Kiewit Co.,* 135 Neb. 587, 283 N. W. 220; *Kajundzich v. State Ind. Acc. Com.,* 164 Ore. 510, 102 P. 2d 924.

We have no case in our state suggesting that compensation for the loss of leg, for the arm, hand, or other member of the body, where such compensation is provided by the schedule, should be decreased by the use of an artificial limb, or that a partial loss of such a member should decrease the compensation because of the use of braces or other artificial appliances. We are cited to no case from other jurisdictions so holding, and our own research has disclosed none.

In *Masoner v. Wilson & Co.,* 141 Kan. 882, 44 P. 2d 265, prompted by arguments in the brief, there is a discussion as to whether a workman's industrial vision should be computed with or without the use of glasses. It is pointed out that the decisions from other states, some of which have a statute on the subject, are not in harmony; that we have no statute on the subject in this state; and it was said:

"Perhaps it would be governed by the principle which underlies our decisions to the effect that under some circumstances an injured workman should submit to an operation (*Gentry v. Williams Brothers,* 135 Kan. 408, 10 P. 2d 856), although this point is not suggested." (p. 884.)

The question was not decided in that case for reasons stated. The quoted portion of the opinion, however, gives appellant some hope. Our conclusion now is that the matter is not governed by the principle which underlies the Gentry case, for the reason that this is a scheduled injury and the amount of compensation payable is to be determined by the schedule applicable thereto. A further reason, if one be needed, is that the use of glasses would not restore the lens of the eye lost by the injury plaintiff received in this case—the physical injury is not cured by the use of glasses as a hernia would be cured by a successful operation.

Appellant cites *Washington Terminal Co. v. Hoage*, 79 F. 2d 158, where the United States court of appeals of the District of Columbia, construing the federal longshoremen's and harbor workers' compensation act, 33 U. S. C. A. § 901 *et seq.*, which is construed to provide compensation for loss or disability in earning power, held assistance of glasses should be considered in determining extent of loss of vision. The court cited *Frings v. Pierce-Arrow Motorcar Co.*, 169 N. Y. S. 309, where the court, construing a state statute identical with the federal one, reached the same conclusion, and other New York cases. *Massett v. Armerford Coal M. Co.*, 82 Pa. Superior Ct. 579, construing a statute identical with that of New York, and *Cline v. Studebaker Corporation*, 189 Mich. 514, 155 N. W. 519, both reached the same conclusion.

The cases bearing upon the question as to whether compensation for injury to an eye should be computed without or with the aid of corrective lens are collected in 99 A. L. R. 1507 and in previous annotations and in the subsequent decisions. Each of these annotations has noted a conflict in the authorities, which it is said continues to exist. This conflict for the most part results from differences in the statute being considered. Some statutes, it is said, make a specific provision with regard to the question. Where the statute does not specifically or indirectly require a holding that the use of corrective lens must be taken into account the great weight of authority is that the compensation should be computed without the use of such corrective lens. (*Johannsen v. Union Iron Works*, 97 N. J. L. 569, 117 A. 639; *Petrillo Co. v. Marioni*, 33 Del. 99 [3 Harr. 99], 131 A. 164; *Graf v. Nat. Steel Products Co.*, 225 Mo. App. 702, 38 S. W. 2d 518; *Livingston v. St. Paul Hydraulic Hoist Co.*, 203 Minn. 62, 279 N. W. 829; *Parrott Motor Co. v. Jolls*, 168 Okla. 96, 31 P. 2d 925; *Fuel Co. v. Appeal Board*, 118 W. Va. 565, 191 S. E. 49; *Platt-Rogers v. Industrial Com.*, 101 Colo. 458, 74 P. 2d 673; *Schrum v. Upholstering Co.*, 214 N. C. 353, 199 S. E. 385.)

It is conceded we have no statute in this state which requires the commissioner or the court, in considering the amount of compensation due for an injury to an eye, to take into consideration the aid which might be furnished by corrective lens. On the contrary, our statute with respect to scheduled injuries has been uniformly construed as being the sole guide to determine the amount of compensation when the injury is once determined. See: *Hering v. San Ore Construction Co.*, 130 Kan. 70, 285 Pac. 592; *Gallivan v. Swift*

& Co., 136 Kan. 234, 14 P. 2d 665; *Smythe v. Western Star Milling Co.*, 136 Kan. 416, 15 P. 2d 419; *Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 72 P. 2d 79; *Justice v. A. C. Flour Mills Co.*, 147 Kan. 402, 76 P. 2d 802; *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684; *Amos v. J. E. Trigg Drilling Co.*, 153 Kan. 617, 113 P. 2d 107, and earlier cases cited therein.

More than that, since the general revision of our compensation law in 1927 compensation commissioners in this state have issued pamphlets concerning procedure and rules. In rating eye injuries they have been using the Snellen method of notation for distance and near vision, together with the adopted percentage of loss of vision and weeks of compensation due as measured by the Snellen standard. This method is accepted and approved by the ophthalmological section of the American Medical Society and the one adopted in many states. With respect to rating eye injuries the following rule among others has been in use:

"Where the injury is to one eye, so that the measurement of compensation is subject to the schedule, the percentage loss of vision is that without the aid of corrective lens, though the employer is required to furnish corrective lens as a part of his medical liability." (Procedure and Rulings of Kansas Workmen's Compensation Commissioner, 1941 Revision, p. 65.)

Had the statute, as interpreted by the decisions above mentioned or the practice of the compensation commissioner in rating eye injuries, not been satisfactory to our people the legislature has had frequent opportunity to pass such a statute on the question as would be thought desirable. The fact that no such statute has been enacted indicates that our people are satisfied with previous holdings of the court and the practice of the compensation commissioner upon this question.

Whatever may be the rule in other jurisdictions, or the reasons for it, we are convinced that under our statute when a workman sustains an injury to an eye, compensation for which is subject to the schedule, the percentage loss of vision is that without the aid of corrective lens.

We find no error in the record. The judgment of the court below is affirmed.