## Hendricks v. Kentucky & Virginia Leaf Tobacco Co.

February 17, 1950.

Rehearing denied June 9, 1950.

Sidney B. Neal, Judge.

Bennett & Hennessey and Zeb A. Stewart for appellant.

Byron, Sandidge & Holbrook for appellee.

STANLEY, COMMISSIONER—Reversing.

The judgment set aside an award of the Workmen's Compensation Board to the appellant, Joseph Hendricks.

While the employee was coopering a tobacco hogshead, a sliver of metal flew off a nail he was driving and struck him in his left eye. Eventually, in a relatively brief time, vision in both of his eyes was practically lost. The Board concluded that the condition was 50% the result of the injury and 50% of a pre-existing disease in the eyes and awarded compensation accordingly. Though the circuit court delivered no written opinion, its conclusion must have been that there was no evidence of probative value sustaining the Board's finding; that

the defendant's condition was not attributable in any degree to the industrial accident. Our review, therefore, requires a summary of the evidence before the Board.

Hendricks testified that a bit of metal penetrated his eye as above described. A fellow employee related that he had come to her, saying that he had something in his eye, and, by the use of a twisted corner of her handkerchief, she was able to extract "a small sliver of steel," adding, "but that wasn't all." This witness and another told that the man's eye was inflamed several days afterward and one of them had dropped medicine in it for him three times a day. Hendricks was sent by the company's nurse to Dr. Sigler, an eye specialist in Owensboro, who treated his eye "ten or fifteen times." He was off from work a few days, then returned with a patch over his eye. He was laid off, he testified, when he could not see a crow bar which his boss sent him for. Hendricks testified, "My eye never bothered me in my life" before the accident, which occurred April 11, 1946. Nor had he been otherwise incapacitated. He is corroborated by his brother. A former employer testified that he had done good work around a mine as late as the latter part of 1944.

It was brought out on cross-examination of Hendricks that his grandmother, his mother and five of her children, including himself, and his own child and grandchild all had "specks" in their eyes, but the condition had "never bothered" him or any of them. His brother gave similar testimony as to the hereditary specks on the eyes of the family.

Dr. B. H. Sigler, an eye specialist, introduced in behalf of the employee, testified that Hendricks had come to him on May 14 (one month after the accident), and given a history of having gotten something in his eye. The doctor concluded that the inflamed condition was "traumatic conjunctivitis" and prescribed therefor.

He also found Hendricks had in addition to the inflammation, congenital cataracts in both eyes. The conjunctivitis had healed by August 9, and he was able to return to work the middle of that month. The doctor described congenital cataracts as being a deposit on the lens of the eye and stated that the condition in both eyes of the patient was not of traumatic origin; that there

was no evidence of traumatic injury the last time he had examined the man.

The only evidence offered by the company was that of Dr. William Cockrum, an eye specialist of Evansville. He had examined Hendricks on August 5, 1946, (four months after the accident) at the instance of the employer's insurance carrier. The patient gave a history of the accident described, but the doctor found no evidence of any recent injury. He found him suffering only with congenital cataracts in both eyes. This condition was the cause of his practical blindness. Hendricks had told him that several members of his family had "specks in their eyes," by which term, the doctor stated, laymen sometimes call cataracts. Hendricks had a type known as "familial," or those which "travel in families."

The reasoning and conclusion of the Board, as expressed in the opinion of the Honorable E. Poe Harris, member, was: "If we were to accept the medical testimony to the exclusion of all other, which the defendant argues we should do, the plaintiff would not be entitled to a recovery; or if we should accept the testimony of the plaintiff and his lay witnesses, which he wants us to do, he would be entitled to a recovery on the basis of total permanent disability. We are unwilling to accept either extreme."

There is much omitted from the record that might have shed light on the question at issue. Thus, it was brought out on the cross-examination of Hendricks that he had been treated for eye trouble on some indefinite occasions by Dr. Chambers and Dr. Sherman, who had lately told him that the "specks," as he called them, "must be cataracts." But neither of these physicians testified. Of greater pertinence is the fact that neither Dr. Sigler or Dr. Cockrum was asked, nor gave an opinion, as to whether or not the injury may have aggravated or intensified or have accelerated the progress of the pre-existing disease in the man's eyes. Our case closest in point is Glogora Coal Co. v. Boyd, 293 Ky. 610 160 S. W. 2d 816. In that case there was testimony that in some instances glaucoma may be attributable to traumatism, thereby justifying the decision of the Board that such disease in the employee's eyes may have been

due to injury by a small piece of steel. That was a close case, but this is closer.

In the liberal interpretation and application of the Workmen's Compensation Law, KRS 342.001 et seq., it has generally been regarded that a workman is entitled to his benefits even though his disability would not have resulted or would not have been as great if he had been whole and well or not already handicapped by some physical infirmity. In the present case, it is certain from the proof that this workman had not been disabled before the particle of metal struck him in the eye; in other words, that there was no pre-existing partial disability, although it is logically deducible from the testimony of the physicians that there was an incipient, arrested disease. Yet, there was no intervening cause between the injury and the fast development of blindness. It followed in an uninterrupted sequence. Though the court may assume that the condition, unaffected by the injury, would have eventually impaired or practically destroyed the eyesight, we cannot say that the Board was without evidence upon which to base its finding that the injury was a contributing factor. Black Mountain Corp. v. Stewart, 272 Ky. 140, 113 S. W. 2d 1141, is much in point.

It is to be remembered that in setting up the system of industrial compensation, the Legislature limited the power of the judiciary in its consideration of the evidence to determining whether the Board acted without or in excess of its powers. KRS 342.285. This is construed as determining whether there was any evidence of probative value to support the finding of fact. The rule has been frequently applied to a finding that an industrial injury was a contributory cause of an employee's disability. B. F. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50. Being governed by that restriction and having regard for the liberality of the terms and provisions of the Compensation Act, this court reaches the conclusion that the trial court should have confirmed the award.

It is not amiss to observe that a few days after the filing of the appeal for review in the circuit court, but before the record was certified, the employer moved the Board to reopen the case on the ground of mistake or fraud, and this motion was passed pending the judicial proceeding. Under the terms of KRS 342.125, the Board will yet have authority to re-examine the case, or the

trial court may remand it to the Board under the provisions of KRS 342.285(4).

The judgment is reversed.