**PARGAS COMPANY and Commercial Union Insurance Company, Appellants,**

v.

**Thomas O. HAGAN and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

May 31, 1968.

R. Scott Plain, Wilson & Wilson, Owensboro, for appellants.

Richard A. Robertson, Robertson & Robertson, Bratcher, Cooper & Flaherty, Owensboro, for appellees.

STEINFELD, Judge.

The Workmen's Compensation Board awarded Thomas O. Hagan $37.00 per week for 100 weeks because of the permanent loss of the sight of his left eye. KRS 342.105(20). An appeal was taken to the Daviess Circuit Court (KRS 342.285) which affirmed. The employer and its insurance carrier now seek reversal of that judgment (KRS 342.290) claiming that the Board erred, as a matter of law, in evaluating the disability of Hagan because it failed to consider the benefit he received through the use of corrective lens and spectacles. We affirm.

On the 29th day of July, 1965 Hagan, a truck driver for Pargas Company, was injured when a pressure relief valve on his truck blew open and sprayed liquid gas into his face causing minor body burns and injuries to his left eye. Cataract operations were required and he lost 90% of the vision of that eye. He claimed benefits provided by the Workmen's Compensation Act for the loss of the sight of that eye. KRS 342.105(20). Medical testimony disclosed that with the use of corrective lens the vision impairment is no more than 19%. A physician testified that Hagan by wearing contact lens or spectacles could do the same work that he was doing prior to his injury. Hagan admitted that his occupation and duties are the same as before the injury and that he is working approximately the same number of hours and has received a raise in compensation.

The Board found that the injury "resulted in industrial blindness in one eye." Black Starr Coal Corp. v. Reeder, et al, 278 Ky. 532, 128 S.W.2d 905 (1939).

The employer contends that "The Workmen's Compensation Act is: (1) an industrial act; (and) (2) it is concerned with disability, not injury." It concedes that Hagan "* * * is claiming compensation under the enumerated permanent-partial disability section, being KRS 342.-105(20)". No claim is made of disfigurement or of disability "to the body as a whole". KRS 342.110.

Although other jurisdictions have considered the issue now before us (142 A.L.R. 832) here it is a case of first impression. We have never adjudicated a contention that diminution in disability by the use of corrective devices must be considered in determining loss under KRS 342.105. It reads in part as follows:

"For injuries or disabilities from an occupational disease enumerated in the following schedule the employe shall receive, in addition to temporary total disability compensation for the period of actual total disability, not exceeding twenty weeks, a weekly compensation equal to sixty-six and two-thirds percent of his average weekly earnings, * * * for the periods stated herein :"

Then twenty-one subsections follow. Eighteen cover the loss of the extremities of the body and parts thereof. One subsection relates to stiffness of fingers and one to the "loss of hearing". Subsection (20) reads:

"For the total and permanent loss of the sight of an eye, one hundred weeks, plus an additional twenty weeks in cases where the eyeball is enucleated."

KRS 342.110 covers injuries causing permanent-partial disability to the body. Appellant relies partly on KRS 342.020 which requires the employer, at its expense, but within certain monetary limits to provide medical treatment. It reads in part:

"(3) Where a compensable injury or occupational disease results in the amputation of an arm, hand, leg or foot, or the loss of hearing, or the enucleation of an eye or the loss of teeth, the employer shall initially furnish in addition to other medical, surgical and hospital treatment enumerated in subsections (1) and (2) of this section, a modern artifical member, and where required, proper braces * *".

Appellant argues that the benefit from the lens and spectacles must be considered because of the requirement contained in KRS 342.020 and the provisions of KRS 342.035 that "No compensation shall be payable for the * * * disability of an employe * * * if, and in so far as his disability is aggravated, caused or continued, by an unreasonable failure to submit to or follow any competent, surgical treatment or medical aid or advice." The employer illustrates that disability is lessened or eliminated in bone fusion cases by the operation. It notes that our cases have held that disability means an injured person's inability or incapacity to perform work in his occupation and cites Burt v. Clay, 207 Ky. 278, 269 S.W. 322 (1925); Black Starr Coal Corp. v. Reeder, 278 Ky. 532, 128 S.W.2d 905 (1939); Hendricks v. Kentucky & Virginia Leaf Tobacco Co., 312 Ky. 849, 229 S.W.2d 953 (1950); Stumbo & Vance Coal Co. v. Tackett, Ky., 300 S.W.2d 232 (1957); Clark v. Gilley, Ky., 311 S.W.2d 391 (1958); Baier v. Schnell, Ky., 323 S.W.2d 587 (1959) and Shuman v. May, Ky., 327 S.W.2d 14 (1959). These cases do not support this contention because the benefit of the use of corrective devices was not in issue, and disability is irrelevant to KRS 342.105(20).

Cases from other jurisdictions are cited. Conceding that there are no Kentucky cases passing upon the issue now before us both parties candidly admit that the decisions from the foreign jurisdictions are not harmonious. See 99 C.J.S. Workmen's Compensation § 316b, p. 1136, and 142 A. L.R. 832 as well as the annotations referred to herein. These texts generally

agree that the "conflict is only partly a real one, being due in many instances to the difference in the controlling statutes."

Appellee cites Kibbey v. General American Transportation Company, Ky., 404 S. W.2d 15 (1966), wherein we held that "industrial blindness * * * constitutes 'total' loss of vision for compensation purposes" and that "Since the loss of sight was appellant's degree of disability, KRS 342.-105(20) governs the award." Hagan contends that Kibbey is dispositive of the contention that corrective devices may not be taken into consideration. In Kibbey there was no issue that mechanical means could be used to reduce disability.

We know of no statute which requires or directs the Board to reduce the award in cases in which the use of corrective devices eliminates all or part of the disability. As pointed out above the claim is under KRS 342.105(20) "for the total and permanent loss of the sight of an eye" and is not predicated upon a claim for disability. Holt v. West Kentucky Coal Co., Ky., 350 S.W.2d 155 (1961).

We subscribe to the holding in McCullough v. South Western Bell Telephone Company, 155 Kan. 629, 127 P.2d 467 (1942), wherein that court said:

"The injury in this case is not of that type; it is a scheduled injury. The statute (G.S.1941 Supp. 44–510(3) (c) (1) to (26)) contains a schedule providing for the compensation to be paid for injuries to specific parts of the body. In Stefan v. Red Star Mill & Elevator Co., 106 Kan. 369, 373, 187 P. 861, 862, it was said: 'The Legislature evidently believed the loss of a specific member or organ deserved the compensation stated, whatever else occurred.'"

In McCullough cases from many jurisdictions are discussed and it reasons " * * * that the use of glasses would not restore the lens of the eye lost by the injury plaintiff received in this case,—the physical injury is not cured by the use of glasses as a hernia would be cured by a successful op-

eration." It said that "Where the statute does not specifically or indirectly require a holding that the use of corrective lens must be taken into account the great weight of authority is that the compensation should be computed without the use of such corrective lens." Citing many cases. We also concur with Lindsay v. Glennie Industries, 379 Mich. 573, 153 N.W.2d 642 (1967), wherein that court said:

"(1) We treat this case as one of first impression. We hold the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute.

(2) We recognize that substituting an artificial lens has 'restored' vision to the otherwise sightless eye. We point out that a specific loss award is not made as compensation for diminution of use of the involved organ or member. It is not awarded to compensate for loss of earnings or earning capacity. It is awarded irrespective of either fact or both. If ophthalmological advances and refinements in the use of contact lens has in fact rendered the amended statute inconsonant with its original legislative intent, it is the province of the legislature to say so. We construe the statute in the plain meaning of its wording."

Burdine's, Inc. v. Green, 150 Fla. 361, 7 So.2d 460 (1942), dealt with a claim that an employee had suffered permanent injury to an eye which diminished its normal vision more than 80%. The disability was reduced about 40% by the use of glasses. The employer claimed that the award should be proportionately reduced. Denying this contention the court said "It occurs to us however that the legislature did not intend that such artifical means should be taken into account in computing compensation * * *". It relied on Pocahontas Fuel Company v. Workmen's Compensation Appeal Board, 118 W.Va. 565, 191 S.E. 49 (1937), in which that court

"observed that the statute of that state contained nothing that showed an intention of the legislature that the use of eye glasses should be considered in determining the amount of an award for injury to the claimant's eyes."

In Otoe Food Products Company v. Cruickshank, 141 Neb. 298, 3 N.W.2d 452, 142 A.L.R. 816 (1942), the facts were quite similar to those in the case now before us. That opinion discussed the decisions from many jurisdictions and referred to Juergens Bros. Co. v. Industrial Commission, 290 Ill. 420, 125 N.E. 337 (1919), in which the facts also were almost identical with those in the Hagan case. In Juergens the court said "Where an employee by an injury to one eye loses all practical use of it except by the use of lenses giving him normal vision at fixed distances, the injury amounts, in effect, to loss of sight of the eye, notwithstanding the possibility that he might to a certain extent recover the sight of that eye if the sight of the other eye should be destroyed." The Nebraska court in analyzing its statute continued:

" * * * we see nothing in the act indicating an intention on the part of the legislature that disability after correction should be the basis for awarding compensation, where there has been an eye injury. If such had been the legislative intent, the act would no doubt have been drafted to so provide. We should not, by construction, put into a law provisions which it does not contain, nor read into it a meaning not intended by the legislature. If the act is faulty, the correction should be made by the legislature and not by the court. We see no

more logic in holding that the legislature intended to base disability in an eye case on the condition of the eye after correction, than in a leg or arm case where compensation should be awarded on the extent of disability after the attachment of a brace or other appliance. The fact that glasses are required to restore vision is evidence of the permanency of the injury, and whether artifical means may partially or even wholly restore sight, it nevertheless cannot obliterate the effect of the accident causing the injury."

■ We interpret the law of our state as requiring the Board in considering a claim made pursuant to KRS 342.105(20) to disregard the use of eyeglasses or lens in determining the amount of an award "for the total and permanent loss of the sight of an eye * * *".

■ In this age of startling development of aid to humans by mechanical devices and the transfer of body parts from one being to another legislatures soon may amend workmen's compensation acts to align them with technological advances. Even though liberal construction of the law is required by KRS 342.004, we find nothing in the present Act from which we can conclude that the lens or spectacles used by Hagan reduced his benefits under the section of the Act by which he claims. We hold that the Board and the court below ruled correctly.

The judgment is affirmed.

All concur.