470

(680 P.2d 928)

No. 55,773

ALBERT J. HAHN, *Appellant,* v. CESSNA AIRCRAFT COMPANY and HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellees.*

Petition for review denied October 2, 1984.

Opinion filed May 17, 1984.

*James B. Zongker,* of Render & Kamas, of Wichita, for appellant.

*Larry Shoaf,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, for appellees.

Before REES, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is a workers' compensation appeal by the claimant, Albert J. Hahn. At issue is the nature and extent of Hahn's disability to his right eye, a scheduled injury.

Hahn's right eye was injured during August 1975 when a metal fragment struck him in the eye, causing a traumatic cataract. He has since had eye surgery twice and wears a contact lens as a result of the injury to his eye. He was 25 years of age when the accident occurred.

Before the accident Hahn had 20/30 uncorrected vision in his right eye and 20/20 with a corrective lens. As a result of the compensable accident, his uncorrected vision in his right eye is now so poor it cannot be measured, but it is correctable to 20/30 with the use of a contact lens. Without a corrective lens, Hahn is industrially blind in his right eye.

The administrative law judge, director and district court judge all relied on *Piper v. Kansas Turnpike Authority,* 200 Kan. 438, 445, 436 P.2d 396 (1968), and awarded Hahn the difference between 20/20 and 20/30 vision, which computes to a 10.625 percentage visual acuity loss. (K.A.R. 51-8-4.)

The majority of this panel has no quarrel with *Piper.* We simply are of the opinion the law the Supreme Court laid down

in *Piper* is limited to the facts of that case and does not require the result reached by the trial court here.

In *Piper*, the Supreme Court dealt with a factual situation whereby the worker was industrially blind in his left eye *before* the accident. He was totally blind in his right eye (the eyeball had been removed). The vision in his left eye with a corrective lens was 20/20.

Piper suffered compensable injury to his left eye that resulted in retinal detachments on three separate occasions and three different surgeries for repair. After the three surgeries, Piper's *corrected* vision deteriorated to 20/70 for far vision and Jaeger-7 for near vision. The examiner, director and trial court all found that the injury was compensable and awarded temporary total and medical expense, *but* denied any compensation for permanent disability because Piper was industrially blind without the corrective lens before the accident, as he was after the second compensable injury.

In *Piper*, the examiner, director and trial judge all relied on *McCullough v. Southwestern Bell Telephone Co.*, 155 Kan. 629, 127 P.2d 467 (1942). The *McCullough* court summarized its holding in its syllabus by stating that the percentage loss of vision should be computed without the aid of a corrective lens.

In *McCullough*, the Supreme Court refused to consider the claimant's vision as a result of using a corrective lens, stating:

"We have no case in our state suggesting that compensation for the loss of leg, for the arm, hand, or other member of the body, where such compensation is provided by the schedule, should be decreased by the use of an artificial limb, or that a partial loss of such a member should decrease the compensation because of the use of braces or other artificial appliances." 155 Kan. at 633.

In *Piper*, the injured workman's vision in his only functional eye had deteriorated from a corrected vision of normal eyesight to 20/70 distant vision, with his having to use a magnifying glass to read. The Supreme Court adopted the very rational position that "[w]here an injured workman sustains the loss of an eye *industrially blind* with naked vision, but normal with correction," the permanent disability is measured by the difference between the corrected vision before the injury and the corrected vision after the injury. 200 Kan. 438, Syl. ¶ 1 (emphasis supplied).

In our opinion, the key to the *Piper* case is that the eye was *industrially blind* before the accident, and decisions based on

that case should be limited to factual situations when the worker was industrially blind before the compensable injury but had essentially normal sight with corrective lenses.

We are faced here with an entirely different factual situation. We have an injured workman who had near normal vision (20/30) before the compensable injury, but used a corrective lens to correct his vision to 20/20. After the accident and resulting surgeries, the lens was removed from his right eye and he was, at age 25, industrially blind in that eye. He has 20/30 vision with the aid of a contact lens. Simply stated, with the use of an artificial device, that is, a lens to replace the one in his eyeball that was destroyed as a result of the compensable injury, he can now see as well as he could without correction before the compensable accident. He sees with the aid of an artificial appliance, just as someone who has lost a leg stands with the aid of an artificial limb.

This is a scheduled injury, thus impairment of function and not work disability is the test for determining the loss. *Gross v. Herb Lungren Chevrolet, Inc.,* 220 Kan. 585, 552 P.2d 1360 (1976). We view eye injury cases as unique and, in our opinion, compensable loss of the use of an eye must necessarily involve consideration of the greatest loss to the worker. In other words, the loss of use should be measured by the ability to see after the accident, either by comparing uncorrected vision before and after the accident or by comparing corrected vision before and after the accident, depending upon which method measures the greater loss.

Thus, as we see it, the permanent loss in this case should be measured by the difference between claimant's uncorrected eyesight before the compensable injury and his uncorrected eyesight after the injury. We believe this method to be consistent with *McCullough* and *Piper.*

We recognize that some jurisdictions have adopted a test for measuring loss of vision after an injury by measuring before and after without corrective lenses, while others have adopted a test of measuring vision before and after the compensable injury using corrective lenses. As has been noted often, what other jurisdictions do is of little use in interpreting our own unique Workmen's Compensation Act. We also recognize that when this accident occurred, the director had a rule (K.A.R. 1977 Supp.

51-8-9) in effect that interpreted *McCullough* and *Piper* as they have been interpreted here. That part of the rule was removed in 1978.

Reversed and remanded with directions to enter an award for claimant consistent with this opinion.

PARKS, J., dissenting: I respectfully dissent from the majority's opinion.

In my view, this case is controlled by *Piper v. Kansas Turnpike Authority*, 200 Kan. 438, Syl. ¶ 1, 436 P.2d 396 (1968). There our Supreme Court held: "Where an injured workman sustains the loss of an eye industrially blind with naked vision, but normal with correction, the evaluation of industrial visual loss, for the purpose of determining the amount of compensation due, shall be based on visual efficiency findings which are made with the aid of corrective lenses; the loss being the difference between the corrected vision before the injury and the corrected vision after the injury." We are bound by that decision.

I would affirm.