**JOHNSON CONTROLS, INC., Appellant,**

v.

**Steven E. RUSSELL, Deceased; Larry W. Russell, Administrator; Hon. Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2001–CA–002770–WC.

Court of Appeals of Kentucky.

Aug. 30, 2002.

Samuel J. Bach, John C. Morton, Morton & Bach, Henderson, KY, for Appellant.

John J. Chewning, Hopkinsville, KY, for Appellee.

Before BARBER, COMBS, and JOHNSON, Judges.

### OPINION

BARBER, Judge.

The Appellant, Johnson Controls, Inc. ("the employer"), seeks review of an Opinion of the Workers' Compensation Board, affirming the ALJ's determination that Steven E. Russell's ("Russell") death was work-related and awarding benefits to his estate under KRS 342.730(6). Finding no error, we affirm.

The events leading up to Russell's death are as follows:

On May 1, 1999, Russell pulled and strained his left arm at work. The parties stipulated that he sustained a work-related "incident" on that date and that the employer had due and timely notice of the plaintiff's injuries.[1]

On May 5, 1999, Russell saw Dr. Campbell, upon referral by Dr. Pavon. He related having injured his left arm while lifting with the left hand only, with a tremendous amount of swelling and pain the next day. Dr. Campbell noted a massive hematoma formation in the distal half of the arm, especially on the medial aspect; further there appeared to be a muscle mass present distally. Dr. Campbell believed that Russell had a complete rupture of the long head of the biceps and kept him off work "for the time being," noting that Russell had been doing limited work with his right hand. Russell was to return

---

1. According to the parties' stipulation contained in the 4–24–01 Benefit Review Conference Order and Memorandum.

in one week and continue wearing a sling. Dr. Campbell anticipated that it would be 8–10 weeks before the biceps rupture would sufficiently heal enough "for him to use that left arm within ease at all."

On May 10, 1999, Russell was brought to Trigg County Hospital via ambulance, after his family found him that morning, passed out on the floor—"he said he did not know how he got on the floor." Russell said he hurt his arm about one week ago, was seen by Dr. Campbell, had been on medicine, and off work since. He was confused, WCB was 45,000; glucose was 520, sodium and chloride were dangerously low. Arrangements were made to transfer Russell to Jennie Stuart Hospital.

Russell was admitted to the Jennie Stuart Hospital ICU on May 10, 1999. Discharge summary by Dr. Shah reflects that Russell had severe hyponatremia, sudden change in mental status, was severely hyperglycemic, and severely confused. All liver function tests were abnormal. Blood cultures came back Gram positive cocci, streptococcal. Blood pressure was very low, "probably due to septic shock."

On May 11, 1999, Russell was transferred to St. Thomas Hospital for further treatment and care. Discharge summary by Dr. Hyatt Sutton reflects that:

> Mr. Steven Russell is a 46 year old gentleman who is admitted on 5/11/99 ... in critically ill condition. He had multisystem organ failure which was related to sepsis due to recently ruptured biceps tendon which became secondarily infected. Patient arrested shortly after arriving to our hospital ... and was resuscitated for 20–30 minutes. Dr. Bill Shell saw the patient in consultation and took him to the OR for exploration of the left arm with I D of abscess and debridement. He found a large abscess which was cleaned out thoroughly.[2] Dr. Vito Rocco saw the patient in consultation and he was placed on continuous 24 hour dialysis. Patient improved with regards to his liver and kidney failure but his platelet count dropped because of the sepsis and he required multiple transfusions of platelets and packed cells. His blood sugars initially were over 1000 at the outside hospital. The patient remained on an insulin drip in our facility.

> The patient continued to improve from a metabolic standpoint, however, neurologically the patient was unable to wake up. We held all sedatives for more than four to five days and the patient did not wake up....

On May 24, 1999, Russell died. The death certificate prepared by Dr. Sutton, dated May 25, 1999, reflects that the immediate cause of death was sepsis, due to (or as a consequence of) left arm abscess, due to (or as a consequence of) ruptured biceps tendon.[3] The manner of death is listed as "accident," at work, described as "Employ [sic] picked up a tub of parts while stocking up and tub of parts slipped."

On February 14, 2000, Larry Russell, appellee herein ("Appellee"), filed an application for resolution of injury claim, form 101, as Administrator of the Estate of Steven E. Russell. The April 24, 2001 benefit review conference order reflects that the only contested issue was whether Russell's death was work-related, pursuant to KRS 342.750. The version of KRS

---

2. The May 11, 1999 operative report reflects a diagnosis of abscess, left arm.

3. According to the death certificate, the underlying cause, defined as the "disease or injury that initiated events resulting in death," is to be entered last.

342.750(6),[4] in effect on the date of Russell's injury (and death), provided that:

> In addition to other benefits as provided by this chapter, if death occurs within four (4) years of the date of injury as a direct result of a work-related injury, a lump sum payment of twenty-five thousand dollars ($25,000) shall be made to the deceased's estate, from which the cost of burial and cost of transportation of the body to the employee's place of residence shall be paid.

The evidence on causation was in conflict. The April 24, 2001 hearing order reflects that the following medical proof was filed: Dr. Sokolov, Dr. Shell, New England Journal of Medicine, Dr. Sutton, Dr. Campbell, (Jennie) Stuart Medical Center, Dr. Julio Melo, Dr. Hyatt Sutton, and Dr. Eduardo Pavon. We shall refer to the evidence only as necessary for a resolution of the issues before us.

On June 22, 2001, the ALJ rendered an opinion and award, finding that:

> The logical sequence of events appears to have started with the relatively minor injury which Plaintiff/Decedent sustained to his left arm when lifting a tub of parts at work.... It appears that he either ruptured a muscle or injured a tendon, from which he developed a hematoma and which subsequently became infected, leading to sepsis.... There does not appear to be any reports of cuts and bruises ... which could have served as the portal entry of the subsequently identified streptococcus B bacteria. Although the reports attached to Dr. Sokolov's letter primarily describe a Group A streptococcus necrotizing fasci-

tis, the same mechanism would appear to apply to the streptococcus B group....

The ALJ awarded benefits to Russell's estate in the amount of $25,000.00 pursuant to KRS 342.750. The employer's petition for reconsideration was denied by order of July 26, 2001, and by amended order of August 3, 2001.

The employer appealed to the Board. The employer argued that the ALJ had relied upon speculative evidence and that Russell's death was not the direct result of a work-related injury, as required for an award of benefits under KRS 342.750(6). The Board noted the recent decision in *Coleman v. Emily Enterprises,*[5] in which the Supreme Court construed the statutory language, "direct result," [6] to be synonymous with "proximate cause." The Board "recognized" that under KRS 342.750(6) death must result within four years of the injury and concluded that it was "reasonable to interpret the intent of the Legislature that the closer in time the death is to the injury the less stringent the standard of proof that is necessary to establish the causal connection." The Board concluded that the appropriate construction of the words "direct result" contained in KRS 342.750(6) was "proximate result or proximate causation." The Board then examined the evidence to determine if Russell's injury to his arm at work was the proximate cause of his death. The Board concluded that "after reviewing the evidence in its totality," the ALJ's decision was based upon substantial evidence of probative value, noting that Russell's un-

---

**4.** Effective 7/14/2000, the statute was amended to provide for a $50,000.00 lump sum.

**5.** Ky., 58 S.W.3d 459 (2001).

**6.** In *Emily Enterprises*, the Court construed KRS 342.0011(1). The statute defines injury,

and provides that "Injury ... shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a *direct result* of a physical injury." (Emphasis added.)

derlying diabetes would not prohibit a finding in his favor.[7]

On appeal to this Court, the employer raises two issues: (1) that the evidence failed to establish Russell's death was a direct result of the alleged injury; and (2) that the Board erred in determining that KRS 342.750 created a "less stringent" proof standard. In essence, the employer argues that the ALJ's award lacks a sufficient evidentiary foundation because the evidence only established an indirect link between the work-injury and Russell's death.

The employer asserts that *Emily Enterprises, supra,* does not apply, because it deals with a different section of the Workers' Compensation Act.[8] There, the Supreme Court held that "[a]lthough the legislature has used [both] the terms 'proximately causes' and 'direct result' in KRS 342.0011(1), we are persuaded that those terms do not denote different types of causal relationships because the terms 'proximate cause' and 'direct cause' are synonymous." *Id.* at 462. The employer fails to convince us that the words "direct result" should be construed differently, here. We agree with the Board that "particularly when viewing the overall intent of providing death related benefits" a "proximate result" or "proximate causation" analysis is appropriate. This approach is consistent with the Supreme Court's construction in *Emily Enterprises, supra,* long-standing Kentucky case law,[9] and the Legislative mandate that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." KRS 446.080(1).

The employer also asserts that the ALJ and the Board created "inference upon inference in finding this claim compensable" and that the medical evidence did not support the ALJ's findings. Our review is limited to determining whether the decision is clearly erroneous, based upon the reliable, probative, and material evidence contained in the *whole* record. KRS 342.285(2)(d); KRS 342.290.

Here, the record includes the deposition of Dr. Hyatt Sutton, who treated Russell at Jennie Stuart, and completed the death certificate, which we have noted, above. Dr. Sutton explained that sepsis is the body's response to infection, characterized by high fevers and hypotension (low blood pressure), which can result in death, as it did in this case. Diabetics cannot fight infection, as non-diabetics can. Russell's diabetes was not known before he became critically ill.

The employer's counsel questioned Dr. Sutton about causation:

> Q. In this case, is that what you believe happened to Mr. Russell? He sustained this muscular strain at work and had some sort of bacterium to which he was exposed. His autoimmune system couldn't fight that off, and the infection

---

7. Citing *Hendricks v. Kentucky and Virginia Leaf Tobacco Co.,* 312 Ky. 849, 229 S.W.2d 953 (1950).

8. *Emily Enterprises* deals with the December 12, 1996 version of KRS 342.0011(1); the case *sub judice* deals with the December 12, 1996 version of KRS 342.750(6).

9. *Ellis v. Litteral,* 296 Ky. 287, 176 S.W.2d 883 (1944), speaks in terms of proximate re-

sult where death follows a work-related injury. The plaintiff's burden of proof does not require that he disprove every other suggested cause. Moreover, "where death follows soon after the injury of an able-bodied man, a presumption arises that the death was caused by the injury in the absence of other than conjectural testimony to the contrary." *Id.* at 885–86.

set up in the place where this muscle strain had occurred?

A. Yeah, that's likely what happened.

Dr. Sutton was also questioned in further detail by Appellee's counsel:

Q. Now, had a hematoma developed in the left upper arm?

A. Yes.

Q. Okay. And can a hematoma become infected?

A. Yes.

Q. And can an infection, if not aggressively treated, lead to sepsis?

A. Yes.

Q. And then sepsis, if not treated early on can lead to death?

A. Right.

Q. And is that what happened in this case?

A. Yes.

In his deposition, Dr. Sutton agreed that the death certificate he had prepared was still "his opinion" and was accurate. Dr. Sutton explained that although he had listed a ruptured biceps tendon on the death certificate, after speaking with the surgeon "it wasn't clear that it was actually a ruptured biceps tendon as much as it was a hematoma." Regardless, a hematoma can be infected and lead to sepsis.

In a June 12, 2000 letter, made an exhibit to his deposition testimony, Dr. Sutton explained that there was "no evidence of external abrasion or other wound source which would have led to this problem. He did, however, have a black eschar on his arm that was related from the infection making its way out to his skin from the area of the biceps injury."

Dr. Sutton's opinion provides a substantial evidentiary foundation for the ALJ's decision. There is no ground for reversal. We affirm the Workers' Compensation Board's November 21, 2001 opinion, affirming.

ALL CONCUR.